IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JULIANNE R. PICKETT-PILTZ

OPINION and ORDER

Plaintiff,

09-cv-685-bbc

v.

MICHAEL ASTRUE,
Commissioner of Social Security,

Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

This is an action for judicial review of an adverse decision of the Commissioner of Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Julianne R. Pickett-Piltz seeks reversal of the commissioner's decision that because she is not disabled, she is not eligible for Disability Insurance Benefits under Title II of the Social Security Act, codified at 42 U.S.C. §§ 416(I) and 423(d).  Plaintiff contends that the administrative law judge erred when she failed to give weight to the opinions of plaintiff's treating psychiatrist and treating physician.  I find that the administrative law judge gave these opinions proper weight.  However, I am persuaded by plaintiff's argument that she was entitled to a written report concerning the reliability of the vocational expert's testimony.  Because I agree that

1

the administrative law judge failed to develop the record to ensure that the vocational expert had an adequate foundation for her estimates of the number of jobs plaintiff could perform, I will remand the case to the commissioner for further proceedings and affirm it in all other respects.

The following facts are drawn from the administrative record (AR):

FACTS

A. Background

Plaintiff was born on May 2, 1960. AR 22. She has a high school education and past relevant work as a medical records clerk, a collection clerk and a collection agent in a bank. AR 22.

Plaintiff filed an application for disability insurance benefits on March 9, 2006, alleging that she had been unable to work since November 7, 2003 because of chronic depression, bipolar disorder, anxiety and a back condition. AR 16, 121. After the local disability agency denied plaintiff's application initially and upon reconsideration, plaintiff requested a hearing, which was held on October 10, 2008 before Administrative Law Judge Sharon L. Turner. The administrative law judge heard testimony from plaintiff, AR 601-18, a neutral medical expert, AR 619-28, and a neutral vocational expert, AR 628-44. On February 3, 2009, the administrative law judge issued her decision, finding plaintiff not

disabled.  AR 16-23.  This decision became the final decision of the commissioner on September 25, 2009, when the Appeals Council denied plaintiff's request for review.  AR 4-7.

## B. Medical Evidence

### 1. Mental impairment

On August 15, 2003, plaintiff saw Dr. Jerold J. Harter, M.D., a psychiatrist, for depression.  He noted, "Multiple family stressors that are probably excessively complicated aggravate her depression."  AR 216.  Harter diagnosed major depressive disorder with a Global Assessment Functioning Score of 58.  He started her on Wellbutrin.  AR 216.

On November 7, 2003, plaintiff returned to see Dr. Harter, complaining of headaches that were likely caused by Lexapro.  Harter noted that plaintiff was depressed but not suicidal.  He continued her medications.  AR 207.

On January 21, 2004, plaintiff went to the emergency room at St. Michael's Hospital in Stevens Point, Wisconsin.  She was depressed and suicidal and was admitted to the mental health unit. AR 179-80.  During her hospitalization, her medications were adjusted and her mood and affect steadily improved.  AR 157.  Her Global Assessment Functioning score was 75 at her discharge on February 3, 2004.  AR 157-58.

When plaintiff saw Dr. Harter on February 25, 2004, she reported being depressed.

3

Because plaintiff reported feeling more unstable after stopping Abilify, Harter re-started the medication.  AR 202.  On March 30, 2004, plaintiff saw Harter and reported feeling significantly better since resuming Abilify.  AR 200.

Plaintiff did not return to see Dr. Harter until August 27, 2004.  He reported that she had not been following up in psychotherapy.  He wrote that, although plaintiff had gained 35 pounds since starting new medications, she reported feeling better overall.  Harter started plaintiff on Lamictal.  AR 194.  When plaintiff returned to see Harter on September 29, 2004, she reported doing well on Lamictal.  He reported that she had a clear improvement and discontinued her Abilify.  AR 193.

On April 22, 2005, plaintiff saw Dr. Harter again.  She reported having discontinued taking Lamictal, having resumed taking Abilify and was doing reasonably well.  Harter noted that she was not much better in terms of coping with stress.  AR 192.

On June 7, 2005, Dr. Harter completed a Psychiatric B-Questionnaire for the state disability agency, stating that plaintiff had major depressive disorder, recurrent, severe without Psychotic Features.  AR 189.  He noted that plaintiff had been hospitalized for psychiatric reasons from January 21, 2004 to February 3, 2004.  He found that plaintiff was limited to following simple instructions and would be unable to handle the added stress of the work environment with its transitions and expectations.  AR 191.

When plaintiff returned to see Dr. Harter on September 5, 2006, she was quite

4

depressed. AR 357. When Harter saw her again on December 5, 2006. he encouraged her to attempt working even though he was doubtful that plaintiff could work again. Plaintiff reported losing her health insurance because her husband had changed jobs. AR 356.

Almost a year later, on October 8, 2007, plaintiff saw Dr. Harter again and complained of being more depressed. Harter adjusted her medications. AR 355. Around this time, Harter completed a "Mental Work Capacity Questionnaire" for plaintiff. AR 359. He indicated that plaintiff had mood disturbance and persistent disturbance of mood or affect. AR 369. Also, he indicated that plaintiff was unable to meet competitive standards of completing a normal workday and workweek without interruptions from psychologically based symptoms. He thought she would be unable to perform at a consistent pace without an unreasonable number and length of rest periods. AR 362. Harter noted that plaintiff would miss more than four days of work a month. In completing the check box form, Harter indicated plaintiff had had three episodes of decompensation and noted the date of these episodes as "10/8/07, for approximately two months." AR 363. Harter checked the following box on the form that mirrored the language of one of the "C" criteria for listing 12.04,

> A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in environment would be predicted to cause the individual to decompensate.

5

On April 10, 2008, Dr. Harter saw plaintiff for a routine follow-up appointment. She was doing quite well on Abilify. Harter noted that her major depressive disorder was in full remission. AR 354.

About six months after the administrative law judge issued his decision, Dr. Harter wrote a letter to plaintiff's lawyer. In that letter, he explained that when he noted in his treatment notes that plaintiff was "in remission," he meant that on medication she can function reasonably well when she is off work and has a lower stress load. He stated that he did not think that if she were to attempt gainful employment her condition would remain the same. AR 588.

2. Physical impairment

On June 18 and 19, 1998, plaintiff had a functional capacity evaluation at the Marshfield Clinic at the request of Dr. Gregory Powell. AR 369-79. Dr. Powell saw plaintiff on April 13, 1999 to review the evaluation with her. He noted that she was able to work at light or medium duty capacity with some limitations in her motion. AR 367. He completed a Physical Capability Form, which indicated that plaintiff could lift 20 pounds frequently and 30 pounds occasionally, could frequently sit and occasionally stand, occasionally bend and work at shoulder level and seldom twist climb, squat or work overhead. AR 368.

While plaintiff was hospitalized in January 2004 for her depression, she saw Dr. Farouq A. Al-Hamdan for back pain. She reported that she had had a lumbar fusion at the level L5-S1 in 1995. Hamdan noted that plaintiff had diffuse tenderness in the lumbosacral region bilaterally, but that she had a normal gait. AR 164-65.

On February 28, 2006, plaintiff was seen by Dr. Steven S. Bergin for cold sores on her lips. He examined her and noted that her extremities showed full range of motion with full and symmetrical peripheral pulses. Plaintiff had a normal gait and no gross motor sensory deficit. AR 453.

On June 29, 2007, plaintiff saw Physician Assistant Philip M. Mahoney for her chronic low back pain. He noted that she had been hospitalized in May 2006 and x-rays had shown no obvious breakdown of the fusion site and no obvious disc narrowing above the fusion site. He ordered a magnetic resonance imaging scan. AR 545-46. The July 2, 2007 scan showed post-operative changes at L5-S1, although no abnormal enhancement was present, and minor diffuse disc bulging at L3-4 and L4-5 without evidence of significant canal stenosis. AR 577.

On November 21, 2007, plaintiff saw Dr. Mazin Ellias for her back pain and reported that the only thing that helped her pain was taking Oxycontin and lying flat on her back. AR 276. On examination, plaintiff had some tenderness along the L4-5 and L5-S1 facet joints bilaterally. AR 277. Ellias diagnosed facet joint-mediated pain and gave her

7

injections.  AR 278.  From December 5, 2007 though February 26, 2008, plaintiff went to physical therapy.  She showed improvement with treatment.  AR 384-96.

## C.  Consulting Physicians

On July 12, 2005, state agency psychologist William Merrick completed a Psychiatric Review Technique for plaintiff, diagnosing affective disorder.  AR 128.  He concluded that plaintiff had mild restrictions of the activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence and pace and no episodes of decompensation.  He saw no evidence of the presence of the "C" criteria. AR 138-39.

Also, Merrick completed a mental residual functional capacity assessment for plaintiff, finding her moderately limited in her ability to (1) perform, understand, remember and carry out detailed instructions; (2) maintain attention and concentration for extended periods; (3) complete a normal workday and workweek without interruptions from psychologically based symptoms; (4) perform at a consistent pace without an unreasonable number and length of rest periods; (5) accept instructions and respond appropriately to criticism from supervisors; and (6) respond appropriately to changes in work setting.  AR 142-44.

On July 13, 2005, state agency physician Pat Chan completed a physical residual functional capacity assessment for plaintiff, listing a diagnosis of chronic back pain.  AR 148.

8

Chan found that plaintiff could lift 50 pounds occasionally and 25 pounds frequently, stand or walk six hours in an eight-hour workday and sit six hours in an eight-hour work day.  AR 148-51.

### D.  Hearing Testimony

At the administrative hearing, plaintiff testified that she had not worked since 2003 because of chronic back pain, depression, irritable bowel and panic disorder.  Her most recent job was as a patient financial counselor at the Rice Medical Center.  AR 602.  She did dishes, laundry and dusting and tried to walk a quarter of a mile a day.  AR 605-06.  She could lift a gallon of milk, sit for a half hour to 45 minutes at a time, stand for ten minutes, but she needed to alternate between sitting and standing.  AR 615.

Plaintiff testified that she had daily pain in her lower back, that she took pain medication and did exercises.  AR 607-08.  She took Abilify, Zoloft, Trazadone, Clonazepam, Gabpentin, Oxycodone and Naproxen and had side effects from this medication including drowsiness, blurred vision, dry mouth and forgetfulness.  AR 608.

Plaintiff testified that she saw a psychiatrist every six months and that she had tried to commit suicide in the past.  AR 609, 611.  She reported having panic attacks several times a week.  AR 610.

Plaintiff testified that she had difficulty working when she needed to be precise and

9

to complete tasks.  Also, she found working with patients, co-workers and supervisors stressful.  AR 613.

The administrative law judge called Sami Nafoosi, a doctor of internal medicine, to testify as a neutral medical expert.  AR 619.  Nafoosi testified that plaintiff had had a lumbar fusion in 1995 and had arthritis, degenerative disc disease and disc bulging.  Also, she had depression and had been hospitalized in January 2004 after a suicide attempt.  AR 620. Nafoosi concluded that plaintiff's impairments did not meet or equal listings 1.0 and 12.0 and that she would be limited to jobs where she could lift more then 20 pounds occasionally and 10 pounds frequently, sit for eight hours in an eight-hour work day, stand or walk six hours in an eight-hour day, be able to change positions one to three minutes each hour and perform occasional balancing, stooping, kneeling, couching, crawling, squatting and climbing. She could not do jobs that require her to have excessive contact with the general public and should not be in charge of safety devices, but she could do simple repetitive type tasks.  AR 621.

When asked for specific limitations, Dr. Nafoosi testified that plaintiff would have mild limitations in maintaining concentration and attention for extended periods, completing a normal workday and workweek without interruptions from psychologically based symptoms, responding appropriately to criticism from supervisors, getting along with coworkers or peers without distracting them or exhibiting behavioral extremes and

10

responding appropriately to changes in work setting.  AR 624.  He testified that he did not find any evidence of the "C" criteria.  AR 627.

The administrative law judge called Susan Allison to testify as a neutral vocational expert.  AR 628.  When she asked plaintiff's lawyer whether he would stipulate to Allison's qualifications as a vocational expert, he responded that he had never received a curriculum vitae for Allison.  The administrative law judge said she would fax it to him.  When Allison stated she had testified in previous hearings in which he had participated, plaintiff's lawyer stipulated to her qualifications.  AR 629.

Allison testified that plaintiff's past work was light and sedentary and semi-skilled.  AR 631.  The administrative law judge asked Allison to assume an individual of plaintiff's age, work experience and the residual functional capacity to perform work that requires lifting more then 20 pounds occasionally, 10 pounds frequently, sitting for eight hours in an eight hour work day, standing or walking six hours in an eight-hour day, changing positions one to three minutes each hour, occasional balancing, stooping, kneeling, couching, crawling, squatting and climbing.  The individual could perform simple repetitive tasks, with no excessive contact with the general public, and could not be in charge of safety devices.  AR 632.  Allison testified that the individual could not perform plaintiff's past work because it was all semi-skilled.  However, she testified that the individual could perform light unskilled jobs, including assembler positions and maid positions.  AR 632.

11

Next, the administrative law judge asked Allison to assume the individual could not do work requiring high production work or rapid assembly work.  Allison testified that the individual could perform the maid positions, as well as 1,945 office helper positions (DOT 239.567-010) in Wisconsin.  AR 634.  She testified that there would be no work the individual could perform if the individual had to miss three or more workdays a month.  AR 634.

Plaintiff's lawyer asked Allison how she came up with the number of jobs available.  She testified that she used the Occupational Employment Quarterly.  He asked her whether the statistics differentiated between full-time and part-time employment.  She answered no.  AR 638.  Then, he asked her whether she could state with any degree of probability the number of jobs that were part time.  She responded, "Part-time employment is generally a low percentage of the full-time employment."  AR 638.  Under continued questioning, she testified that the Quarterly did not provide the number of jobs available for each <u>Dictionary</u> title and that the numbers provided are for a category of jobs and not for a specific job.  In response to another question from plaintiff's lawyer, she testified that she had not done a study in Wisconsin or any other place to assess the percentage of those jobs that are part-time as compared to full-time.  AR 639-40.

Next, plaintiff's lawyer asked Allison whether she had any notes, report or anything she had used as a reference source for her testimony.  She testified that she did not, but that

12

she had used the <u>Dictionary of Occupational Titles</u>, the Occupational Employment Quarterly, selected occupation guides and the labor market statistics.  AR 641.  The lawyer asked the administrative law judge for a copy of the notes that Allison had used in preparation for her testimony, arguing that the law entitled him to anything that the vocational expert used as a resource for her testimony.  AR 642.  The administrative law judge took counsel's motion under advisement.  The administrative law judge then asked Allison whether her testimony conformed to the <u>Dictionary of Occupational Titles</u> and she said that it did.  AR 643.

## E.  <u>Administrative Law Judge's Decision</u>

In reaching her conclusion that plaintiff was not disabled, the administrative law judge performed the required five-step sequential analysis.  <u>See</u> 20 C.F.R. §§ 404.1520, 416.920. At step one, the administrative law judge found that plaintiff had not engaged in substantial gainful activity from November 7, 2003, her alleged onset date, through December 31, 2008, her date last insured.  At step two, she found that plaintiff had severe impairments of disorder of the lumbar spine and depression.   At step three, the administrative law judge found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  Specifically, she found that plaintiff did not meet Listing 1.04 or Listing

13

12.04.  AR 18-19.

The administrative law judge considered the October 7, 2008 "Mental Work Capacity Questionnaire" completed by Dr. Jerold Harter, plaintiff's treating psychiatrist.  She stated that, although Harter had indicated that plaintiff had had three episodes of decompensation, he had listed only one episode of two months' duration.  The administrative law judge concluded that counting this one episode and plaintiff's earlier hospitalization, plaintiff had had only two episodes of decompensation.  Also, she found that plaintiff did not have two marked limitations of the "B" criteria but had only mild restrictions of the activities of daily living, moderate difficulties in maintaining social function and mild difficulties in maintaining concentration, persistence or pace. In finding no evidence of the "C" criteria, she referred specifically to Dr. Halter's report.  AR 19.

The administrative law judge found that plaintiff retained the residual functional capacity to perform work requiring sitting eight hours in an eight-hour workday, standing or walking six hours in an eight-hour workday with the ability to change positions one to three minutes each hour; frequently lifting or carrying 10 pounds, occasionally lifting or carrying 20 pounds; occasionally climbing, balancing, stooping, kneeling, crouching and crawling; simple repetitive tasks; no contact with the general public; not being in charge of safety devices; and no high production, quota or rapid assembly work.  AR 20.  In making her determination of plaintiff's mental residual functional capacity, the administrative law

14

judge considered the opinion of Dr. Halter that plaintiff could not handle work stress but noted that he had found plaintiff was in remission in April 2008.   The administrative law judge gave some weight to Dr. Halter's opinion when she found that plaintiff was limited to simple, repetitive tasks with no high production, quota or rapid assembly work.   In determining plaintiff's physical residual functional capacity, the administrative law judge reviewed the medical evidence in the record and concluded that plaintiff's physical examinations and tests did not indicate that her back pain was disabling.  AR 21.

At step four, the administrative law judge found that plaintiff was not able to perform her past work.  AR 22.  At step five, relying on the testimony of the vocational expert, the administrative law judge found that there were 1,945 jobs as office helper (DOT #239.567-101) in Wisconsin that plaintiff could perform.  She found the expert's testimony to be consistent with the information contained in the Dictionary of Occupational Titles.  The administrative law judge denied plaintiff's motion for a written report to establish the basis of the expert's opinion, finding no evidence of any conflict between the cross-examination conducted by the representative and the vocational expert's testimony.  The administrative law judge concluded that plaintiff was not disabled.  AR 23.

15

OPINION

A.  Standard of Review

The standard by which a federal court reviews a final decision by the commissioner is well settled:  the commissioner's findings of fact are "conclusive" so long as they are supported by "substantial evidence."  42 U.S.C. § 405(g).  Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge.  Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000).  Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner.  Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).  Nevertheless, the court must conduct a "critical review of the evidence" before affirming the commissioner's decision, id., and the decision cannot stand if it lacks evidentiary support or "is so poorly articulated as to prevent meaningful review."  Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).  When the administrative law judge denies benefits, she must build a logical and accurate bridge from the evidence to her conclusion.  Zurawski v. Halter, 245 F.3d 881, 887 (7th Cir. 2001).

16

### B.  Treating Physician's Opinions

Plaintiff contends that the administrative law judge erred by disregarding Dr. Halter's opinions that plaintiff had a mental impairment that met Listing 12.04 and that she had a more limited mental residual functional capacity.  Also, she argues that the administrative law judge erred in not giving great weight to the physical restrictions found by Dr. Powell in 1998.

Although an administrative law judge must consider all medical opinions of record, he is not bound by those opinions.  Haynes v. Barnhart, 416 F.3d 621, 630 (7th Cir. 2005).  "[T]he weight properly to be given to testimony or other evidence of a treating physician depends on circumstances."  Hofslien v. Barnhart, 439 F.3d 375, 377 (7th Cir. 2006).  When a treating physician's opinion is well supported and no evidence exists to contradict it, the administrative law judge has no basis on which to refuse to accept the opinion.  Id.; 20 C.F.R. § 404.1527(d)(2).  When, however, the record contains well supported contradictory evidence, the treating physician's opinion "is just one more piece of evidence for the administrative law judge to weigh," taking into consideration the various factors listed in the regulation.  Id.  These factors include the number of times the treating physician has examined the claimant, whether the physician is a specialist in the allegedly disabling condition, how consistent the physician's opinion is with the evidence as a whole and other factors.  20 C.F.R. § 404.1527(d)(2).  An administrative law judge must provide "good

17

reasons" for the weight she gives a treating source opinion, id., and must base her decision on substantial evidence and not mere speculation.  White v. Apfel, 167 F.3d 369, 375 (7th Cir. 1999).

Plaintiff argues that the administrative law judge erred in rejecting Dr. Halter's conclusion that plaintiff had evidence of the "C" criteria and thus met the listing 12.04.  To establish that she met listing 12.04, Affective Disorders, plaintiff would have to show that she had a major depression that resulted in at least two of the following: 1) marked restriction of activities of daily living; or 2) marked difficulties in maintaining social functioning; or 3) marked difficulties in maintaining concentration, persistence or pace; or 4) repeated episodes of decompensation (the "B" criteria).  In the alternative, she would have to show evidence of the "C" criteria as follows

> Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1.  Repeated episodes of decompensation, each of extended duration; or
>
> 2.  A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3.  Current history of 1 or more years' inability to function

outside a highly supportive living arrangement, with an indication of continued need of such an arrangement.

Plaintiff is correct that Halter completed a "Mental Work Capacity Questionnaire" in which he checked a box mirroring the language of the second choice of the "C" criteria. Plaintiff argues that the administrative law judge failed to consider this evidence. However, in making her decision whether plaintiff's mental impairment met a listed impairment, the administrative law judge addressed Dr. Halter's questionnaire. She disagreed with Halter that there was evidence of three episodes of decompensation. She also referred to Dr. Halter's questionnaire when finding no evidence of the "C" criteria. I can infer from her statements that the administrative law judge considered Dr. Halter's marking of the checkbox mirroring the "C" criteria and rejected it when she found that the evidence failed to establish the presence of the "C" criteria. Further, the state agency psychologist and the medical expert who testified at the hearing found no evidence of the "C" criteria. Plaintiff has produced no evidence that she had three episodes of decompensation or that she met the "C" criteria.

Next, plaintiff argues that the administrative law judge did not give proper weight to the limitations imposed on plaintiff by Halter. The administrative law judge considered Halter's statements about plaintiff's inability to handle stress and found that they were contradicted by his 2008 conclusion that plaintiff's depression was in full remission.

19

Plaintiff argues that this was not a good reason because Halter's April 10, 2008 note that plaintiff was in remission was an "aberration from all medical records." However, as the commissioner points out, plaintiff did consistently better when she was taking Abilify. Halter's treatment notes indicate that plaintiff's felt significantly better after she resumed taking Abilify in March 2004 (AR 200), that she had clear improvement when she took Lamictal (AR193), and was doing reasonably well when she resumed taking Abilify in 2005 (AR 192). In 2006, Halter encouraged plaintiff to attempt working again. AR 356.

Further, Halter found that plaintiff was unable to meet the competitive standards of completing a normal workday and workweek without interruption from psychologically based symptoms or performing at a consistent pace without an unreasonable number and length of rest periods. Although the administrative law judge could have done a better job in articulating how he weighed the medical evidence in the record, there is evidence that plaintiff was not as severely limited as Halter believed. The state agency psychologist found that plaintiff was only moderately limited in the ability to complete a normal work day and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Further, Dr. Nafoosi testified that plaintiff would have only mild limitations in these areas.

In sum, the administrative law judge gave good reasons for not giving weight to Dr. Halter's opinion, in light of the substantial evidence in the record that contradicted Halter's

opinion.

I note that in a July 2009 letter, Dr. Halter explained that when he wrote in his treatment notes that plaintiff was "in remission," he meant that on medication she could function reasonably well when she is off work and has a lower stress load. Although plaintiff's lawyer refers to his letter in his brief, it was not in the administrative record before the administrative law judge and therefore could not have been considered by the administrative law judge in making his decision. Accordingly, this court may not consider it. Eads v. Secretary of Dept. of Health and Human Services, 983 F.2d 815, 817 (7th Cir. 1993) ("The correctness of [the ALJ's] decision depends on the evidence that was before him"). There is no basis for remanding this case pursuant to sentence six of § 405(g) because plaintiff has made no attempt to show that good cause existed for the letter's omission from the record, that the evidence was not in existence or available to plaintiff at the time of the hearing or that there is a reasonable probability that the commissioner would have reached a different decision had the evidence been considered. Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997) (explaining requirements for remand for consideration of additional evidence under sentence six of § 405(g)). I am not persuaded that had the administrative law judge seen this letter, her decision would have been different, given the other information in the record.

Plaintiff argues that the administrative law judge erred in not giving weight to Dr.

21

Powell's 1999 restrictions.  As the commissioner points out, these restrictions were placed on plaintiff four years before the onset of her disability when she was still working.   The administrative law judge had no obligation to consider this opinion.

### C.  Vocational Expert Testimony

The administrative law judge relied on the testimony of the vocational expert to find that plaintiff was not disabled because there were jobs that existed in significant numbers in the economy that plaintiff could perform, 1,945 jobs as office helper in Wisconsin.  I note that in Lee v. Sullivan, 988 F.2d 789, 794 (7th Cir. 1993), the court found that 1,400 available jobs satisfied the step five requirement of the existence of a significant number of jobs.

Plaintiff contends that the administrative law judge erred in denying his request for a written report outlining the vocational expert's calculations and the basis for her determination of this number of jobs.  "A vocational expert is 'free to give a bottom line,' but the data and reasoning underlying that bottom line must be 'available on demand' if the claimant challenges the foundation of the vocational expert's opinions."   McKinnie v. Barnhart, 368 F.3d 907, 911 (7th Cir. 2004) (quoting Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir. 2003)).  If the basis of the vocational expert's conclusions is questioned at the hearing, then the administrative law judge should undertake an inquiry into the reliability of

22

the purported expert's conclusions.  Id.

In this case, plaintiff's counsel challenged the reliability of the expert's testimony, and with good reason.  The concept of an "office helper" sounds as outmoded as a switchboard operator.  Counsel questioned how she arrived at the number of available office helper jobs, specifically questioning whether the statistics she used differentiated between full-time and part-time employment.  He asked whether she had done a study in Wisconsin or any other place to assess the percentage of these jobs that are full or part-time.  She testified that she had not.  Also, she testified that the Occupational Employment Quarterly Report she had used did not give the number of jobs for each Dictionary title.  These questions raised an issue of the reliability of the expert's testimony of the number of jobs available.  Although plaintiff's lawyer requested, both at the hearing and in a motion, the data and reasoning on which the expert relied in preparing her testimony, the administrative law judge denied his request.  Moreover, she failed to undertake an inquiry on her own into the reliability of the expert's conclusions.

As in McKinnie, 368 F.3d at 911, Allison did not substantiate her estimates with a written report or other documentation and her "vague responses to [plaintiff's] questioning were insufficient to establish a foundation for her testimony."  Absent supplementation or clarification, the vocational expert's testimony does not provide substantial evidence to satisfy the administrative law judge's burden at step five of the sequential evaluation process.

23

Because the commissioner bears the burden at this step, the administrative law judge was obligated to obtain the supplementation needed to ensure that the expert's testimony was reliable.  Her failure to do so requires remand of the case.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, denying plaintiff Julianne R. Pickett-Piltz's application for Disability Insurance Benefits is REVERSED AND REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) on the ground that the administrative law judge failed to meet his burden at step five and is AFFIRMED in all other respects. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 18th day of June, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge

24